LeCROY RESEARCH SYSTEMS CORPORATION, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Le Croy Research Systems Corp. v. Commissioner
Docket No. 19954-82.
United States Tax Court
T.C. Memo 1984-145; 1984 Tax Ct. Memo LEXIS 523; 47 T.C.M. (CCH) 1345; T.C.M. (RIA) 84145; March 26, 1984. Stephen R. Field, for the petitioner. Frances J. Honecker, for the respondent. FAY
MEMORANDUM OPINION FAY, Judge: Respondent determined a deficiency of $84,858 in petitioner's Federal income tax for its fiscal year ended June 30, 1975. The issues are (1) whether petitioner's whollly owned subsidiary, LRS Export Corp. (herein LRS), qualified as a Domestic International Sales Corporation (herein DISC) under section 992(a) [1] for the fiscal years ended July 31, 1974 and July 31, 1975, and (2) whether all of LRS's income should be reallocated to petitioner pursuant to section 482. The facts have been fully stipulated and are so found. Petitioner, LeCroy Research Systems Corporation, was a New York corporation with its principal place of business in Spring Valley, New York, when the petition was filed herein. During its fiscal years ended June 30, 1975, and June 30, 1976, petitioner *525 was engaged in the manufacture and sale of scientific measurement instruments used in the nuclear energy business. On July 9, 1974, petitioner incorporated LRS under the laws of the State of New York to serve as a "commission agent" DISC with respect to petitioner's export sales. For its fiscal years ended July 31, 1974, and July 31, 1975, LRS filed Federal income tax returns as a DISC and used the accrual method of accounting. At all relevant times, petitioner owned all of LRS's capital stock and operated LRS as a DISC entitled to receive as commission income an amount equal to the maximum amount permitted under the inter-company pricing rules of section 994. On its returns for fiscal years ended June 30, 1975, and June 30, 1976, petitioner reported taxable dividends of $10,120 and $92,528, respectively, as deemed distributions from LRS under section 995(b). Petitioner also claimed on its returns for those fiscal years a deduction for commissions owed to LRS in the amounts of $186,408 and $239,027, respectively. Petitioner did not, however, pay LRS its commissions of $20,240 and $184,556 [2] until April 15, 1975, and April 15, 1976, which was not until the fifteenth day of *526 the nine-month period after the close of LRS's tax year. LRS reported the commissions as income on its returns. In his notice of deficiency, respondent determined that LRS did not qualify as a DISC under section 992(a) for its fiscal years ended July 31, 1974, and July 31, 1975. Additionally, respondent reallocated all of LRS's income to petitioner pursuant to section 482. Thus, respondent determined that petitioner had additional taxable income of $176,788 for its fiscal year ended June 30, 1975. The first issue is whether LRS qualified as a DISC under section 992(a) for its fiscal years ended July 31, 1974, and July 31, 1975. Section 992(a)(1) sets forth the requirements a corporation must satisfy in order to qualify as a DISC for a taxable year. The parties agree that resolution of the first issue herein depends solely on the question of whether or not LRS satisfied the 95 percent qualified export assets test under section 992(a)(1)(B). Section 992(a)(1)(B) provides that the adjusted basis *527 of the corporation's qualified export assets at the close of the taxably year must equal or exceed 95 percent of the sum of the adjusted basis of all the corporation's assets at the close of such year. The term "qualified export assets" is defined in section 993(b). Although that section does not specifically include "commissions receivable" within its definition, the following regulations provide that commissions receivable may be treated as qualified export assets when certain conditions are satisfied. Section 1.993-2(d)(2), Income Tax Regs., provides, in part: If a DISC acts as commission agent for a principal in a transaction * * * which results in qualified export receipts for the DISC, and if an account receivable * * * held by the DISC and representing the commission payable to the DISC as a result of the transaction arises * * *, such account receivable * * * shall be treated as a * * * [qualified export asset]. If, however, the principal is a related supplier * * * with respect to the DISC, such account receivable * * * will not be treated as a * * * [qualified export asset] unless it is payable and paid in a time and manner which satisfy the requirements of sec. *528 1.994-1(e)(3) * * *. Section 1.994-1(e)(3)(i), Income Tax Regs., provides, in part: The amount of * * * a sales commission (or reasonable estimate thereof) actually charged by a DISC to a related supplier * * * must be paid no later than 60 days following the close of the taxable year of the DISC during which the transaction occurred. Since petitioner owned 100 percent of LRS's stock during the years in issue, petitioner was a related supplier with respect to LRS. See secs. 1.482-1(a), 1.994-1(a)(3), Income Tax Regs. Thus, LRS's commissions receivable had to be paid within 60 days following the close of LRS's taxable year in order for such commissions receivable to constitute qualified export assets. It is clear, however, that petitioner did not pay the commissions it owned to LRS within the prescribed time period and, therefore, those receivables were not qualified export assets within the meaning of the regulations. Although petitioner agrees that it did not pay the commissions receivable within the 60-day period, petitioner argues that the regulations containing the 60-day rule are invalid. Petitioner also argues that, in any event, the 60-day rule cannot be retroactively *529 applied for the years in issue. We reject both arguments, however, because this Court recently upheld the validity of sections 1.993-2(d)(2) and 1.994-1(e)(3)(i), Income Tax Regs., and applied them retroactively. CWT Farms, Inc. v. Commissioner,79 T.C. 1054 (1982). [3] All of the arguments advanced by petitioner in the instant case were adequately dealt with in CWT Farms and need not be further discussed herein. [4] Accordingly, we conclude that LRS did not qualify as a DISC for its fiscaly years ended July 31, 1974, and July 31, 1975. The second issue is whether all of LRS's income should be reallocated to petitioner pursuant to section 482. Respondent argues that LRS did not perform any substantive *530 functions nor did it serve any business purpose and, therefore, all of its income must be reallocated to petitioner. Petitioner argues, however, that section 482 does not apply in the DISC context because the DISC legislation specifically contemplated the existence of "paper" DISCs. Section 482 gives respondent broad power to reallocate the income of commonly controlled organizations where such reallocation is necessary to prevent the evasion of taxes or to clearly reflect the income of any such organizations. Edwards v. Commissioner,67 T.C. 224, 230 (1976). In applying section 482, we must sustain respondent's determinations absent an abuse of discretion, and we may reverse only where the taxpayer proves that the determinations are unreasonable, arbitrary, or capricious. Foster v. Commissioner,80 T.C. 34, 143 (1983); Ach v. Commissioner,42 T.C. 114, 125-126 (1964), affd. 358 F.2d 342 (6th Cir. 1966). In the instant case, petitioner's sole contention is that section 482 does not apply to DISCs. However, since we held that LRS did not qualify as a DISC for its fiscal years ended July 31, 1974, and July 31, 1975, petitioner's *531 contention is without merit. Thus, petitioner has failed to show that respondent's reallocation of LRS's income to petitioner was unreasonable, arbitrary or capricious. Accordingly, we must sustain respondent's determination. To reflect the foregoing, Decision will be entered for respondent.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the years in issue.↩
2. The difference between the amount of petitioner's accrual of deductions and LRS's accrual of income is due solely to the different fiscal years used by the two corporations.↩
3. See also Fritzche Dodge & Olcott, Inc. v. Commissioner,T.C. Memo. 1983-56↩. 4. We note that in CWT Farms, Inc. v. Commissioner,79 T.C. 1054, 1070↩ (1982), this Court stated that we will not hesitate to apply the regulations in question retroactively when they are publicly proposed prior to the taxable years at issue. In the instant case, LRS's taxable years at issue were after the regulations were publicly proposed in 1972.